## Farmers Bank & Capital Trust Co. et al. v. Morgan et al.

December 10, 1948.

Marion Rider for appellants.

Hazelrigg & Cox and Salem Moody and Ross & Ross for appellees.

OPINION OF THE COURT BY CLAY, COMMISSIONER—Affirming.

Geoffrey Morgan, a resident of Madison County, died testate in 1940. His wife renounced the will, and her distributable share is not in issue. The controversy

involves a construction of that will, and the question is whether or not the testator's two sons, remaindermen, are now entitled to a division and distribution of the estate. The Chancellor answered this question in the affirmative.

The pertinent provisions of the will are:

"Section 1.   I hereby devise and bequeath all of my property of every kind and character, wherever situated, to the Capital Trust Company of Frankfort, Kentucky, as Trustee for the use and benefit of my wife, Nellie S. Morgan, for and during her natural life." * * *

"Section 2.   At the death of my said wife the said trust shall cease, and the whole of my estate shall then go in fee simple in equal parts to my two sons, Geoffrey Morgan, Jr., and John White Morgan. If at the time of the death of my said wife either of my two sons shall be dead, without leaving descendants, the whole of my estate shall go to the surviving son; but if at such time either of said sons shall be dead, leaving descendants, such descendants shall take the share which would otherwise go to such son if he were living, per stirpes and not per capita."

Since the widow renounced the will, her life estate has been extinguished. The two sons contend their remainder interests were thereby accelerated and they are entitled to the estate immediately, the same as they would be in the event of the life tenant's death. On the other hand, the Trust Company and the infant daughter of one of the sons maintain that the two sons were bequeathed only a contingent remainder, and the parties entitled to the estate cannot be determined until the actual death of the widow.

While the characterization of the estate bequeathed to the two sons does not solve the problem, we believe it more accurate to say they had at the death of the testator vested remainders subject to defeasance. There was the possibility they might not survive the widow, and in that event, if her life estate had not been renounced, the remainders would go under the will to their descendants, if any.

The intention of the testator manifested in the will is, of course, controlling.  Two principal objectives are

750

shown by this instrument: (1) the testator's widow was to have the use and benefit of this estate during her lifetime, and (2) when her interest had been satisfied, the two sons were to receive the estate "in fee simple." A third possibility was also in the mind of the testator: that is, if either or both of the sons did not survive the widow, the survivor or descendants of a deceased son or sons, if any, were to take their shares.

It is argued for appellants that the testator, having fixed a time for the termination of the trust, made the objects of his bounty those persons who would then be in existence. We do not think the will may be construed as indicating the testator had any such thought in mind. Clearly he was more interested in his sons who he specifically named than he was in their possible descendants about whom he might never know.

When the widow renounced the will, one of the dominant objectives of the testator was extinguished. With the life estate out of the way, what did the testator direct? His two sons, if living at the termination of the widow's interest in the estate, were to receive the remainder. Nothing in the will indicates he wished his estate held up indefinitely, without benefit to anybody, for the purpose of ascertaining who would be in existence when the widow actually died.

We believe the construction adopted by the Chancellor is based upon sound reason and good authority. One of the earlier cases deciding a similar question is O'Rear v. Bogie, 157 Ky. 666, 163 S. W. 1107. Property was devised to the testator's wife for life. Upon her death (and that of her brother who predeceased her), the remainder was devised to the then living descendants of the testator's brothers and sisters. The widow renounced the will. It was held the descendants of brothers and sisters, living at the time of renunciation, took the remainder.

A more recent case is that of Baldwin's Coex'rs et al. v. Curry et al., 272 Ky. 827, 115 S. W. 2d 333. The testator bequeathed the residue of his estate in trust for the benefit of his wife during her lifetime. The will provided that immediately after her death the trust principal should be divided among the testator's named nieces and nephews. In the event any nieces or nephews

were dead at that time, their shares were to go to their children. The widow renounced the will. These facts are in substance identical with the ones we have before us. The Court stated, 272 Ky. page 830, 115 S. W. 2d page 335:

"unless a contrary intention be clearly manifest in a will, the renunciation by a widow given a life estate thereunder has the effect of precipitating the remainders dependent upon her life estate the same as if she had died as of the date of renunciation."

The Court pointed out that the supreme object of the testator's bounty was the comfort and welfare of his wife, and the postponement of final distribution was to insure she was taken care of during her lifetime.

The will under consideration shows on its face the same dominant objective. The postponement of the enjoyment of the remainder interests was for the wife's benefit. It was not for the benefit of the alternative substitutional beneficiaries who would receive the estate in the event the testator's sons died prior to the satisfaction of the wife's beneficial interest. See 33 Am. Jur., Life Estates, Remainders and Reversions, Section 159 (1948 Cumulative Supplement).

The judgment is affirmed.